**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Case No. 25-cv-04210-NYW

JUAN IZQUIERDO NAVARRO,

      Petitioner,

v.

PAMELA BONDI, in her official capacity;
KRISTI NOEM, in her official capacity;
ERNESTO SANTACRUZ, in his official capacity; and
JOHNNY CHOATE, in his official capacity;

      Respondents.

_____

**MEMORANDUM OPINION AND ORDER**
_____

This matter is before the Court on the Petition for Writ of Habeas Corpus ("Petition"). [Doc. 1]. Respondents have responded, [Doc. 10], and Petitioner has not sought leave to file a reply. For the reasons set forth below, the Petition is respectfully **GRANTED in part**.

**BACKGROUND**

Petitioner Juan Izquierdo Navarro ("Petitioner" or "Mr. Izquierdo Navarro") is a citizen of El Salvador who has lived in the United States since 2013. [Doc. 1 at ¶¶ 1, 18]. He was taken into custody by United States Immigration and Customs Enforcement ("ICE") on November 19, 2025 and is being detained at the ICE Detention Facility in Aurora, Colorado. [*Id.* at ¶¶ 1, 23]. The Government purports to detain Mr. Izquierdo Navarro for the purpose of executing his final order of removal pursuant to 8 C.F.R. § 241.4(l)(2)(iii). *See* [Doc. 10 at 4–5, 11; Doc. 10-1 at ¶ 16].

Mr. Izquierdo Navarro is subject to an order of removal. [Doc. 1 at ¶ 24]. But in 2017, an immigration judge granted Mr. Izquierdo Navarro deferral of removal under Article III of the Convention Against Torture. [*Id.* at ¶¶ 1, 20, 24]. Following the immigration judge's order, Mr. Izquierdo Navarro was detained for approximately 90 days and then released on an order of supervision. [*Id.* at ¶ 21; Doc. 10 at 7–8]. From then until he was detained on November 19, 2025, Mr. Izquierdo Navarro complied with the conditions of his order of supervision. [Doc. 1 at ¶¶ 21–23].

Mr. Izquierdo Navarro challenges his detention on two primary bases: (1) the revocation of his release was effected without compliance with applicable regulations; and (2) it is not reasonably foreseeable that he will be removed to El Salvador or any other country. [*Id.* at ¶ 27]. Because of these issues, Mr. Izquierdo Navarro argues that his detention violates his rights to due process under the Fifth Amendment, the Immigration and Nationality Act ("INA"), and the INA's implementing regulations. [*Id.*; *id.* at ¶¶ 41–45]. Mr. Izquierdo Navarro seeks a writ of habeas corpus directing Respondents to immediately release him from custody. [*Id.* at 17].

Respondents responded to the Petition on January 16, 2026, [Doc. 10], and Petitioner did not file a Reply. No Party has requested an evidentiary hearing or oral argument, and the Court finds that no hearing is necessary. *Garcia Cortes v. Noem*, No. 25-cv-02677-CNS, 2025 WL 2652880, at *1 (D. Colo. Sept. 16, 2025) (declining to hold a hearing where the petitioner's habeas challenge was "fundamentally legal in nature"). Thus, this matter is fully briefed and ripe for disposition.

**LEGAL STANDARD**

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

**ANALYSIS**

It appears from the Petition that Mr. Izquierdo Navarro does not even know pursuant to which regulation his release was revoked and he was re-detained.  *See* [Doc. 1 at ¶ 34 (making arguments for "*if* he were re-detained pursuant to the exercise of discretion detailed in 8 C.F.R. § 241.4(l)(2)"; *id.* at ¶ 37 (making additional arguments "*[s]hould* Mr. Izquierdo Navarro's re-detention be subject to 8 C.F.R. § 241.13(i)" (emphasis added))].  While Respondents clarify that these actions were taken pursuant to 8 C.F.R. § 241.4(l)(2)(iii), *see* [Doc. 10 at 4–5, 11], Mr. Izquierdo Navarro's lack of knowledge reflects a constitutional flaw with the revocation and re-detention here.

As Mr. Izquierdo Navarro observes, revocation of release under § 241.4(l)(2) must be made either by the Executive Associate Commissioner or, under certain circumstances, a district director.  [Doc. 1 at ¶ 34]; 8 C.F.R. § 241.4(l)(2).  Additionally, this regulation demands that "[u]pon revocation, the alien . . . be notified of the reasons for revocation of his or her release or parole" and "be afforded an initial informal interview

3

promptly after his or her return to Service custody" so that he or she can "respond to the reasons for revocation stated in the notification."  8 C.F.R. § 241.4(l)(1); *see Banega v. Warden of Soft Side S. Facility*, No. 25-cv-01152-JES-DNF, 2026 WL 234042, at *3 (M.D. Fla. Jan. 29, 2026) ("Courts routinely 'interpret[] section 241.4(l) as requiring an informal interview upon the revocation of release regardless of the reason for the revocation'— meaning that the notice and interview requirements stated in § 241.4(l)(1) also apply to revocation under § 241.4(l)(2)." (collecting cases)); *Funes v. Francis*, --- F. Supp. 3d ----, 2025 WL 3263896, at *16 (S.D.N.Y. Nov. 24, 2025) (collecting cases regarding the same); *Guerra v. Bondi*, 2026 WL 114258, at *5–6 (W.D. Okla. Jan. 15, 2026) (finding that notice and interview requirements apply to revocations conducted pursuant to § 241.4(l)(2)).

The Court agrees with Mr. Izquierdo Navarro that "the revocation of his release" was effectuated absent compliance with the above regulations.  *See* [Doc. 1 at ¶¶ 27, 34, 36–37, 41].  First, as Mr. Izquierdo Navarro points out, "there is no indication" that the decision to revoke his release was "made by the Executive Associate Commissioner or by a district director as required by the regulations."  [*Id.* at ¶ 34].  Respondents sidestep this argument by stating that "Petitioner does not provide any factual support" for it.  *See* [Doc. 10 at 11].  However, Respondents do not provide any information to counter Mr. Izquierdo Navarro's assertion and show that the revocation decision was made by a properly authorized official.  *See, e.g.*, [Doc. 10-1 at ¶¶ 16–17 (Declaration of ICE Detention Officer Gary Zolock submitted by Respondents stating only that "ICE" revoked Mr. Izquierdo Navarro's release, and "ICE" notified him that he would be removed to Mexico)]; *see also Nazarian v. Noem*, 5:25-cv-02694-KK-ADSx, 2025 WL 3236209, at *5 n.4 (C.D. Cal. Nov. 3, 2025) (finding that because "Respondents do not specify who made

the decision to revoke Petitioner's release[,] . . . to the extent Petitioner's revocation was a discretionary act pursuant to Section 241.4, Respondents do not establish the decision was issued by a properly authorized official"). Nor do Respondents explain how Petitioner could provide "factual support" when he alleges that he never received any information about why he was re-detained. *See* [Doc. 1 at ¶ 32]. Even the exhibits attached by Respondents purporting to be the "Notice[s] of Removal" which were served on Mr. Izquierdo Navarro do not state anything about revocation at all—including but not limited who made the decision to revoke Petitioner's release. *See* [Doc. 10-1 at 9, 11].

Second, Respondents did not provide Petitioner with the requisite notice and informal interview. The "Notice[s] of Removal" which Mr. Izquierdo Navarro received are plainly insufficient to provide "noti[ce] of the reasons for revocation of . . . release," 8 C.F.R. § 241.4(l)(1), considering that they consist of one sentence stating, "This letter is to inform you that U.S. Immigration and Customs Enforcement (ICE) intends to remove you to Mexico." *See* [Doc. 10-1 at 9, 11; *id.* at ¶¶ 16–17]. Respondents do not argue that Mr. Izquierdo Navarro received any other kind of notice. *See generally* [Doc. 10; Doc. 10-1]. And they do not contest Petitioner's allegation that Respondents have not even responded to his counsel's emails requesting the reasons for Mr. Izquierdo Navarro's re-detention. *See* [Doc. 1 at ¶ 32]. There is also no evidence in the record that Mr. Izquierdo Navarro has been "afford[ed] an opportunity to respond to the reasons for revocation" or received "an initial informal interview promptly after his . . . return to Service custody." 8 C.F.R. § 241.4(l)(1); [Doc. 1 at ¶ 37].[1]

---

[1] The only interview that Respondents mention in their Response is the credible fear interview that United States Citizenship and Immigration Services conducted two weeks after re-detaining Mr. Izquierdo Navarro to determine whether he could be removed to

Respondents' main argument in response to ICE's lack of compliance with its own regulations is that any "deviation" from the required process "would [not] amount to a due process violation" and even if it did, Mr. Izquierdo Navarro would be entitled only to "additional process, not immediate release." *See* [Doc. 10 at 11–12]. But courts across the country routinely hold that (1) ICE violating its own regulations in detaining an individual is a due process violation,[2] and (2) this violation makes the detention unlawful and the proper remedy is release. *See, e.g., Sanchez v. Bondi*, No. 25-cv-02287-CNS, 2025 WL 3484756, at *2 (D. Colo. Dec. 4, 2025) (ordering release of noncitizen when ICE failed to follow its own regulations (collecting cases)); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152–53 (D. Mass. 2025) ("ICE, like any agency, has the duty to follow its own federal regulations. . . . As here, where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal state and ICE fails to adhere to it, the challenged action is invalid." (cleaned up) (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001))); *Guerra*, 2026 WL 114258, at *8 ("Habeas corpus relief is warranted" where "Respondents' failure to comply with § 241.4(l)(3) resulted in redetention,

---

Mexico, *see* [Doc. 10 at 5; Doc. 10-1 at ¶ 18], and it is not relevant here. Respondents do not argue, let alone demonstrate, that Mr. Izquierdo Navarro was informed of the reasons for the revocation of his release and given the opportunity to respond at this interview.

[2] Respondents argue that there is no due process violation here because (1) "Petitioner has been provided notice and an opportunity to be heard," and (2) Petitioner has not shown prejudice from any violation. [Doc. 10 at 11–12]. As to the first point, the Court already found that Petitioner has not been provided with the requisite notice and opportunity to be heard. At most, Petitioner has been heard on his claim of credible fear of prosecution or torture upon removal to Mexico—not, as relevant, on the reasons for the revocation of his release. As to the second point, "failure to receive mandatory process is clearly prejudicial," *Sanchez v. Bondi*, No. 25-cv-02287-CNS, 2025 WL 3484756, at *2 n.* (D. Colo. Dec. 4, 2025), particularly when accompanied by physical restraint.

accompanied by a lack of notice or a meaningful opportunity to respond."); *Funes*, 2025 WL 3263896, at \*25 (finding that the court must order the petitioner's release in "align[ment] with numerous cases releasing habeas petitioners held in custody following procedural due process violations" (collecting cases)); *Grigorian v. Bondi*, No. 25-cv-022914-RAR, 2025 WL 2604573, at \*9–10 (S.D. Fla. Sept. 9, 2025) ("The failure to provide Petitioner with an informal interview promptly after his detention or to otherwise provide a meaningful opportunity to contest the reasons for revocation violates both ICE's own regulations and the Fifth Amendment Due Process Clause. This compels Petitioner's release. Courts around the country have concluded likewise." (collecting cases)).

Accordingly, the Court respectfully **GRANTS** Mr. Izquierdo Navarro's habeas petition in part and **ORDERS** Respondents to immediately release him. Given this Order, the Court need not reach Mr. Izquierdo Navarro's second argument regarding the foreseeability that he will be removed to El Salvador or any other country. *See Sanchez*, 2025 WL 3484756, at \*1; *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025).

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)    The Petition for Writ of Habeas Corpus [Doc. 1] is **GRANTED in part**;

(2)    Respondents are **DIRECTED** to immediately release Petitioner subject to the terms of his Order of Supervision; and

(3)    Respondents **SHALL SUBMIT** a declaration pursuant to 28 U.S.C. § 1746 within three days of this Order affirming Petitioner's release from custody.

DATED:  February 18, 2026

BY THE COURT:

_____
Nina Y. Wang
United States District Judge